Filed 9/29/14  P. v. Garcia CA5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | F066733 |
| v. | (Super. Ct. No. BF1450001A) |
| ERICA MONIQUE GARCIA, | **O P I N I O N** |
| Defendant and Appellant. | |

## THE COURT\*

APPEAL from a judgment of the Superior Court of Kern County.  Michael G. Bush, Judge.

Elizabeth Campbell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Doris A. Calandra, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Detjen, Acting P.J., Franson, J., and Chittick, J.†

†       Judge of the Fresno Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

After the trial court denied her motion to suppress evidence (Pen. Code, § 1538.5),[1] defendant Erica Monique Garcia pled no contest to two counts of receiving stolen property (§ 496, subd. (a)). The court sentenced her to three years eight months in jail pursuant to section 1170, subdivision (h). On appeal, she contends the trial court erred in denying her motion to suppress evidence because the officer who stopped her lacked reasonable suspicion to believe she was involved in criminal activity. We affirm.

## FACTS

At the suppression motion hearing, an officer testified that while he was on duty November 5, 2012, at about 5:13 a.m., he observed a man walking in a residential neighborhood in the dark. As the officer approached, he saw mail sticking out of the man's pocket and he became suspicious. The man lifted his sweater and pulled it over the mail to conceal it. The officer asked him if he was on probation or parole, and he answered he was on parole. He said he was just going for a walk. He explained that he had a tan Ford Ranger and it was parked around the corner on a certain street. The officer examined the mail and saw that it was addressed to Diana P. at an address within 50 to 100 feet from where they were standing.

As they spoke, a tan Ford pickup turned from the street the man had named and pulled up behind the patrol car. It stopped momentarily and then proceeded around the patrol car very slowly. The officer motioned with his flashlight for the pickup to stop because it matched the description of the pickup the man had given him. Defendant, who was driving, stopped the pickup in the road approximately parallel to the patrol car. The officer walked to the passenger's side and motioned for defendant to roll down her window. She was not able to roll it down, so the officer spoke to her by opening the passenger door. He asked her where she was going and if the pickup was her vehicle.

---

[1]    All statutory references are to the Penal Code unless otherwise noted.

2

She said it belonged to a friend.  He asked her if she was on probation or parole, and she said she was on probation.  The officer ran a records check and determined defendant had two outstanding felony arrest warrants and was on probation with search terms for narcotics.  The officer searched the pickup and found mail and credit cards bearing names other than defendant's.

After hearing this evidence and argument by counsel, the trial court stated:

> "I have to agree with [the prosecutor].  Given the suspicious nature of what [the man] was doing with the mail and then he says it's a particular car in that exact description, a car drives up slowly, it really doesn't matter how it drove up because I think the normal citizen could have driven it the same manner, but it came from the same exact location where [the man] indicated his car was parked and the description of the vehicle.

> "In order to have a brief detention, I think the officer was allowed to stop her to investigate.  It's a probable cause stop.  It's not an arrest.  I think [the prosecutor] is right.  He would have been derelict in his duties.  It was what a normal police officer would have done in those circumstances.  I don't think there is anything wrong with that.

> "Then, of course, once he saw the mail and then she is on probation for narcotics, it would allow him to search the vehicle.  And, of course, the arrest warrant, although you didn't put anything on about an inventory search, but the probation for the narcotics would get a search of that vehicle.  So the motion is denied."

## DISCUSSION

Defendant contends the trial court erred in denying the motion to suppress because it erroneously found that the officer had reasonable suspicion to believe defendant was involved in criminal activity.  We disagree.

A detention occurs within the meaning of the Fourth Amendment to the United States Constitution when the officer, by means of physical force or show of authority, in some manner temporarily restrains the individual's liberty.  (*People v. Zamudio* (2008) 43 Cal.4th 327, 341; *People v. Souza* (1994) 9 Cal.4th 224, 229 (*Souza*).)  Although an officer may approach an individual in a public place and ask questions if the person is

3

willing to listen, the officer may detain the person only if the officer has a reasonable, articulable suspicion the detainee has been, currently is, or is about to be engaged in criminal activity. (*Terry v. Ohio* (1968) 392 U.S. 1, 21; see *In re Tony C.* (1978) 21 Cal.3d 888, 893.) To satisfy the requirement, the officer must "point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*Souza, supra*, at p. 231; *United States v. Sokolow* (1989) 490 U.S. 1, 7 ["the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause"].)

The inferences from conduct required to establish a reasonable suspicion ultimately rest on commonsense judgment about human behavior. (*Illinois v. Wardlow* (2000) 528 U.S. 119, 124-125.) "The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal—to 'enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.' [Citation.]" (*In re Tony C., supra,* 21 Cal.3d at p. 894.) But, of course, "an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith. [Citation.]" (*Id.* at p. 893.)

In this case, there is no doubt that articulable facts supported the detention. A parolee suspected of stealing mail in the dark, who was carrying and concealing mail addressed to someone who lived nearby, had just described his pickup truck and its location to the officer, after which a pickup truck matching that description came from that location and pulled up behind the patrol car. At this point, the officer had every

4

reason to suspect that the driver of that pickup truck was the suspect's accomplice in the mail theft. In other words, it was reasonable for the officer to suspect that defendant might be involved in criminal activity. Thus, it was reasonable for the officer to detain not only the suspect, but also defendant, for further investigation.

The trial court did not err in denying defendant's motion to suppress.

## DISPOSITION

The judgment is affirmed.